# FEDERAL LIFE INS. CO. v. ZEBEC.

## No. 5601.

Circuit Court of Appeals, Seventh Circuit.

March 30, 1936.

962

L. L. Bomberger and Glenn D. Peters, both of Hammond, Ind., and Walter H. Eckert, A. R. Peterson, Tom Leeming, and Jerome F. Kutak, all of Chicago, Ill., for appellant.

Frederick C. Crumpacker, Edwin H. Friedrich, and Jay E. Darlington, all of Hammond, Ind., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

On January 27, 1930, appellant delivered to Mike Zebec its life insurance policy for $10,000, in which appellee, his wife, was named as beneficiary. At the time of delivery appellant received from decedent a quarterly payment of $55 which retained the policy in force for three months from the date of issuance. It contained a double indemnity benefit clause by the terms of which appellant agreed to pay to appellee the sum of $20,000 in the event of accidental death, subject, however, to the proviso that there was excluded from the risk "suicide, sane or insane, or any attempt thereat, sane or insane."

The policy further provided that should death occur as a result of any illegal act or from suicide, sane or insane, intentional or unintentional, within two years from the date of the policy, the liability of appellant should be limited to the premiums actually paid. The statutes of Indiana, at the time the policy was issued and delivered, required that no policy of life insurance should be issued or delivered in that state without containing a two-year incontestability clause. Burns' Indiana Statutes (1933) § 39-801 (3).

Decedent was killed by a train on February 13, 1930, while walking on a railroad right of way in the city of Gary, Indiana. This action was instituted on January 15, 1932; appellant filed its answer in three paragraphs. The first was a general denial; the second alleged that death resulted from decedent's illegal act of trespassing upon the railroad tracks in violation of the terms of the policy; and the third paragraph alleged suicide on the part of decedent, and consented that judgment might be rendered against appellant for the premium paid by decedent.

On October 30, 1933, appellant, by permission of court, filed its fourth paragraph of answer in which it charged fraud on the part of decedent in falsely and fraudulently answering in his application the following question: "What Insurance have you in this or any other Companies, Associations, or Societies?" His answer was that he then had a policy in the Metropolitan Life for $5000, issued in 1929, and one in the Croatian Society for $1000, issued in 1912, when, in fact, he had two additional life insurance policies aggregating $6000, with double indemnity clauses in case of accidental death; and two accident policies each for $5000.

A reply of general denial was filed to the affirmative answers. The issues were submitted to a jury, and a verdict was rendered for appellee for the double liability, with interest from the date of the proof of death. Judgment was thereupon rendered upon the verdict and from that judgment this appeal is prosecuted.

The contested issues are: (1) Whether the failure of decedent to disclose the existence of all other insurance on his life was a misrepresentation material to the risk which rendered the policy void; (2) whether the death resulted from accidental means or from an intentional act on the part of decedent; and (3) whether decedent's act in walking on the railroad right of way was such a trespass as would amount to an illegal act within the terms of the policy.

With respect to the first contested issue, Burns' Indiana Statutes (1933) § 39-801 provides: " * * * No policy of life insurance shall be issued or delivered in this state * * * unless the same shall provide the following: * * * (5) That all statements made by the insured in the application shall, in the absence of fraud, be deemed representations and not warranties." Pursuant to this statute, the policy in suit contained that provision.

■ The fourth paragraph of the answer charged decedent with a fraudulent failure to disclose his full insurance. Thus, a question of fact was raised which was properly submitted to the jury.

■ In Federal Life Insurance Co. v. Relias, 99 Ind.App. 115, 185 N.E. 319, 323 (rehearing and transfer denied by the Indiana Supreme Court) the court said, "The jury, under the issues, were the sole judges of the facts that would constitute fraud of the insured, and they were also the sole judges as to whether or not the representations made by the insured were representations material to the risk." See, also, Missouri

State Life Insurance Co. v. Pater (C.C.A.) 15 F.(2d) 737; O'Keefe v. Zurich General Accident & Liability Insurance Co. (C.C.A.) 43 F.(2d) 809, 73 A.L.R. 298; United States Fidelity & Guaranty Co. v. Leong Dung Dye (C.C.A.) 52 F.(2d) 567. Clearly we must follow the construction of the Indiana statute as interpreted by the highest courts of that state. See Chicago, Milwaukee, St. Paul & P. R. Co. v. Risty, 276 U.S. 567, 48 S.Ct. 396, 72 L.Ed. 703; Northwestern Mutual Life Insurance Co. v. Johnson, 254 U.S. 96, 41 S.Ct. 47, 65 L. Ed. 155; Mutual Life Insurance Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L. Ed. 398.

■ It is true that this policy contains an agreement that each and all of the statements and answers contained in the application are material. This, however, was but an effort to evade and nullify the clearly worded statute and has been held to be ineffectual for that purpose. Equitable Life Assurance Society v. Clements, 140 U.S. 226, 11 S.Ct. 822, 35 L.Ed. 497; Continental Life Insurance Co. v. Chamberlain, 132 U.S. 304, 10 S.Ct. 87, 33 L.Ed. 341; Fidelity Mutual Life Ass'n v. Miller (C.C.A.) 92 F. 63. In none of the cases decided by the United States Supreme Court, relied upon by appellant, was there a state statute involved such as we have here. In Hesselberg v. Ætna Life Insurance Co. (C.C.A.) 75 F.(2d) 490, there was such a statute but it was inapplicable because the action was in equity for cancellation of the policy during the life of the insured.

The questions of fraud and materiality, under Indiana's construction of its statute, were purely questions of fact and were quite properly submitted to the jury. The jury, by its verdict, found that decedent's failure to disclose all of his insurance was neither fraudulent nor material. Those findings were based upon substantial and ample evidence and we are not permitted to disturb the verdict in this respect.

■ Appellee contended that the question of fraud under the fourth paragraph of answer was not timely presented under the incontestability clause. In view of what we have said, it is not necessary to pass on that question. It is contended, however, by appellant that the limitations in the policy pursuant to the requirements of the statute, apply only to life insurance and do not apply to the "double indemnity rider." In other words, it is contended that the double indemnity feature for accidental death is not life insurance within the meaning of the statute. We think there is no merit in this contention. The rider is "attached to and made a part of" the life insurance policy and because it contains no disability benefits, but insures only against accidental *death,* it is a policy of life insurance, hence governed by the provisions of the Indiana statute as to incontestability and misrepresentation. See Whitfield v. Ætna Life Insurance Co., 205 U.S. 489, 27 S.Ct. 578, 51 L.Ed. 895; New York Life Insurance Co. v. Rositzky (C.C.A.) 45 F.(2d) 758; Ætna Life Insurance Co. v. Wertheimer (C.C.A.) 64 F.(2d) 438; Pacific Mutual Life Insurance Co. v. Parker (C.C.A.) 71 F.(2d) 872.

■ In the first paragraph of the complaint appellee seeks to recover the face value of the policy, that is to say, she does not seek to recover the double indemnity by reason of accidental death. The second paragraph seeks to recover the double indemnity because the death was accidental. Suicide, if established, would bar a recovery on either paragraph. Under the first paragraph the burden of proving suicide rested upon the appellant, if it relied upon that defense; but under the second paragraph the burden rested upon the appellee to establish accidental death, rather than suicide.

■ The second contested issue is that plaintiff failed to establish the fact that decedent's death resulted from accidental means, rather than from his intentional acts. When the fact of death appears, the law presumes that it was not caused by suicide but that it resulted from causes not voluntarily brought on by the deceased. This presumption is not conclusive but it may be rebutted. The presumption against suicide is not evidence but it is sufficient to establish prima facie that death occurred otherwise than by self-destruction. In the absence of countervailing evidence on the subject of suicide, the presumption would have been sufficient to permit a recovery under the second paragraph of complaint, but this would not amount to a shifting of the burden of proof from appellee to appellant with respect to this paragraph in case facts were presented which tended to rebut the presumption against suicide.

■ In this case there was considerable testimony offered on the subject of suicide. If we should only consider the facts suggested in appellant's brief, unexplained by other evidence which was introduced, we

might indeed conclude that the presumption against suicide was overcome. A perusal of all the evidence, however, on that subject, convinces us that the question was properly submitted to the jury, and that the jury's verdict in this respect is not only supported by the presumption against suicide, but by the apparently rational acts of the decedent at all times prior to his death. It is not necessary to set forth the evidence on this subject, but it is sufficient to say that the very facts upon which appellant relies to overcome the presumption against suicide, when considered with all other evidence relating to those facts, convinces us that the issue of suicide was properly submitted and properly decided. In any event, it was an issue of fact which the jury passed upon under proper instructions from the court, and we are not at liberty to disturb it. In this respect, appellant insists that the court erred in striking out part of the testimony of appellant's witness, John F. Allen. This was by deposition and related to the appearance of the decedent on the morning of and preceding his death. The witness was very uncertain as to the date when he saw decedent and as to his appearance. He was contradicted by every other witness as to the condition of the weather on the day of the death, which strongly indicated a mistaken date. In response to counsel's request to describe decedent's appearance, the witness stated, among other things, the following, which was stricken out, "It looked as though he was looking death right in the face; and I couldn't understand that; and it aroused me * * *" A perusal of his testimony convinces us that the court properly struck his answer which forms the basis of this contention. Most of the answer was not responsive to the question, and the remaining portion involved a conclusion and a mental operation which rendered it incompetent.

On the morning of the fatality decedent had left his store and had walked in a northerly direction until he arrived at the railroad. From there he proceeded northwest along the railroad track, which was the nearest route to his apparent destination. There were no sidewalks nor improved streets along the right of way, and the track upon which decedent walked was the driest path in the right of way upon which he could walk. The record discloses that the use of this track by pedestrians at this point was open and notorious and that it was used generally by people every day. There is no statute in Indiana which makes it unlawful for a person to walk upon a railroad track. Appellant, however, urges that decedent, in going upon the track, was a trespasser under the common law, but all common law offenses have been abolished in Indiana. Burns' Indiana Statutes (1933) § 9-2401. In Cluff v. Mutual Benefit Life Insurance Co., 13 Allen (Mass.) 308, it was held that in order to void a policy of insurance on account of an illegal act, the insured must have died in consequence of a known, intentional, guilty violation of the criminal law. There was substantial evidence in this case to support the implication that there was an implied license from the railroad company to the public and pedestrians to use the track as decedent was using it at the time he was killed. The court properly instructed the jury on this subject, and if appellant desired more specific instructions in this respect, it should have made a request for that purpose. We find no error in the record.

Judgment affirmed.